**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

**Civil Action No. 1:23-cv-02563-JLK**

ROCKY MOUNTAIN GUN OWNERS, and
ALICIA GARCIA

      Plaintiffs,

v.

JARED S. POLIS, in his official capacity as Governor of the State of Colorado

      Defendant.

---

**PLAINTIFFS' REPLY BRIEF**

**IN SUPPORT OF THER REQUEST FOR PRELIMINARY INJUNCTION (DKT. NO. 2)**

---

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................. 1

ARGUMENT .................................................................................................... 2

A.    Plaintiffs' Constitute Part of "The People" Protected by the Second Amendment, and Possess Standing. ................................................................................... 2

B.    A Waiting Period is a Firearms Regulation, Implicating *Bruen*'s Step 1...... 4

    (1)    C.R.S. § 18-12-115 is not presumptively lawful merely because it is triggered by commercial activity. ..................................................... 4

    (2)    C.R.S. § 18-12-115 implicates the plain text of the Second Amendment. 6

C.    There is No Historical Analogue to Colorado's 3-Day Waiting Period, So Defendant Cannot Prevail at *Bruen* Step 2....................................................................... 10

D.    Defendant's Public Policy Arguments Have No Relevance to *Bruen*'s Test of Constitutionality, and Such Arguments Should be Excluded from Evidence. 15

E.    The Other Preliminary Injunction Factors Favor Plaintiffs. ......................... 15

Conclusion ............................................................................................... 16

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Atkinson v. Garland*,
  70 F.4th 1018 (7th Cir. 2023) ................................................................. 11

*Awad v. Ziriax*,
  670 F.3d 1111 (10th Cir. 2012) .............................................................. 16

*Baird v. Bonta*,
  81 F.4th 1036 (9th Cir. 2023) ........................................................... 10, 11

*Connecticut Citizens Defense League, Inc. v. Thody*,
  2023 WL 2687446 (D. Conn. Mar. 28, 2023) ............................................ 7

*Defense Distributed v. Bonta*,
  2022 WL 15524977 (C.D. Cal. 2022) ........................................................ 8

*District of Columbia v. Heller*,
  554 U.S. 570 (2008) ........................................................... 8, 9, 10, 11

*Dobbs v. Jackson Women's Health Org.*,
  142 S. Ct. 2228 (2022) ............................................................................ 2

*Elrod v. Burns*,
  427 U.S. 347 (1976) ............................................................................... 16

*Ezell v. City of Chi.*,
  651 F.3d 684 (7th Cir. 2011) ................................................................... 7

*Free the Nipple-Fort Collins v. City of Fort Collins, Colorado*,
  916 F.3d 792 (10th Cir. 2019) ........................................................... 15, 16

*Hirschfeld v. Bureau of Alcohol, Firearms, Tobacco & Explosives*,
  5 F.4th 407 (4th Cir. 2021) ..................................................................... 6

*Jackson v. City & Cnty. of San Francisco*,
  746 F.3d 953 (9th Cir. 2014) ................................................................... 9

*Kev, Inc. v. Kitsap County*,
  793 F.2d 1053 (9th Cir. 1986) ................................................................ 2

*Luis v. United States*,
  578 U.S. 5 (2016) .................................................................................... 7

*McRorey v. Garland,*
    2023 WL 5200670 (N.D. Tex. Aug. 14, 2023) .................................................. 7, 15

*New York State Rifle & Pistol Association, Inc. v. Bruen,*
    142 S. Ct. 2111 ..........................................................................................*passim*

*Nken v. Holder,*
    556 U.S. 418 (2009) ............................................................................................ 16

*Obergefell v. Hodges,*
    576 U.S. 644 (2015) .......................................................................................... 7, 8

*Pavan v. Smith,*
    582 U.S. 563 (2017) .............................................................................................. 7

*Planned Parenthood Arizona, Inc. v. Humble,*
    753 F.3d 905 (9th Cir. 2014) ................................................................................ 2

*Rocky Mountain Gun Owners v. Polis,*
    2023 WL 5017253 (D. Colo. Aug. 7, 2023).....................................................*passim*

*Rocky Mountain Gun Owners v. Board of County Commissioners of Boulder County,*
    2022 WL 4098998 (D. Colo. Aug. 30, 2022)...................................................... 5

*Rocky Mountain Gun Owners v. Polis,*
    2023 WL 5333771 (D. Colo. Aug. 18, 2023)................................................... 3, 11

*Silvester v. Becerra,*
    138 S. Ct. 945 (2018) ............................................................................................ 7

*Teixeira v. Cnty. of Alameda,*
    873 F.3d 670 (9th Cir. 2017) ......................................................................... 6, 7, 9

*Teter v. Lopez,*
    76 F.4th 938 (9th Cir. 2023) ......................................................................... 4, 12, 14

*United States v. Connelly,*
    2023 WL 2806324 (W.D. Tex. Apr. 6, 2023) ..................................................... 13

*United States v. Daniels,*
    77 F.4th 337 (5th Cir. 2023) ............................................................................... 11

*Verlo v. Martinez,*
    820 F.3d 1113 (10th Cir. 2016) .......................................................................... 16

*Vincent v. Garland,*
    80 F.4th 1197 (10th Cir. 2023) .......................................................................... 10

**Statutes**

C.R.S. § 18-12-115(1)(a)(I) ................................................................................. 4, 5, 6, 8

Colo. Rev. Stats. § 18-12-112 .................................................................................... 5

**Other Authorities**

11A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2948.1 (3d ed. 1998) ....................................................................................................... 16

Plaintiffs Rocky Mountain Gun Owners (RMGO) and Alicia Garcia (together, "Plaintiffs") submit this reply in support of their motion for Preliminary Injunction. Dkt. No. 2.

## INTRODUCTION

If Colorado had enacted a law requiring a 3-day waiting period for obtaining all books purchased from bookstores, there is little doubt that this Court would reject such a limitation as unconstitutional. Without more, this Court may determine that Plaintiffs are likely to prevail on the merits. *See New York State Rifle & Pistol Association, Inc. v. Bruen*, 142 S. Ct. 2111, 2130 597 U.S. — (2022) ("This Second Amendment standard accords with how we protect other constitutional rights.") (putting Second Amendment rights on equal footing with First Amendment and Sixth Amendment rights, by example); *id.* at 2156 ("The constitutional right to bear arms in public for self-defense is not a second-class right, subject to an entirely different body of rules than the other Bill of Rights guarantees.") (cleaned up).

Defendant functionally admits that there is no Founding era or 19th Century analogue to waiting period laws. And laws first enacted in the 20th century do "not provide insight into the meaning of the Second Amendment." *Bruen*, 142 S. Ct. at 2154, n. 28; *id.* at 2122 ("New York State has regulated the public carry of handguns at least since the early 20th century."). Defendant, therefore, rests it hopes almost exclusively on the idea that *Bruen* has no bearing on the question of whether the government may delay an individual's ability to obtain a firearm for self-defense, even if they have already purchased the firearm and passed a background check. For the reasons stated below, those arguments hold no water.

Separately, Defendant errs by suggesting that its interest in enforcing the underlying statute is relevant to Plaintiffs' likelihood of success on the merits. After *Bruen*, courts simply do not ask whether the government can establish an interest in regulating firearms; to be fully clear: Means-

Ends scrutiny is dead after *Bruen*. *Id.* at 2125-2126 ("[T]he Courts of Appeals have coalesced around a 'two-step' framework for analyzing Second Amendment challenges that combines history with means-end scrutiny. Today, we decline to adopt that two-part approach."); *id.* at 2127 ("[T]he government must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms."). To the extent that Defendant or its experts attempt to introduce such evidence, the Court should exclude it as irrelevant.

Because Defendant cannot come close to meeting its burden of establishing that a 3-day waiting period is consistent with historical tradition, Plaintiffs prevail on the most important question with respect to the preliminary injunction inquiry. And because they are constitutionally and irreparably harmed by Colorado's waiting period statute, and the balance of equities tips in their favor, this Court should grant a preliminary injunction.[1]

## ARGUMENT

### A.   Plaintiffs' Constitute Part of "The People" Protected by the Second Amendment and Possess Standing.

Plaintiff Garcia is a responsible individual who is a law-abiding adult American citizen. Plaintiff Rocky Mountain Gun Owners is an association whose members are responsible individuals who are law-abiding adult American citizens. All plaintiffs are therefore part of "the people" protected by the Second Amendment. *See Rocky Mountain Gun Owners v. Polis*, No. 23-cv-01077-PAB, 2023 WL 5017253, *11 (D. Colo. Aug. 7, 2023) ("[A]n interpretation of 'the

---

[1] Note that "waiting periods" on the exercise of other constitutional rights are often viewed skeptically by courts. *See, e.g.*, *Planned Parenthood Arizona, Inc. v. Humble*, 753 F.3d 905, 916 (9th Cir. 2014) (Arizona law that delayed the ability to obtain an abortion was unconstitutional) (abrogated by *Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228 (2022)); *Kev, Inc. v. Kitsap County*, 793 F.2d 1053, 1060 (9th Cir. 1986) (striking down a 5-day waiting period between the filing an exotic dancer's permit and the granting of a license).

people' in the Second Amendment should begin with the assumption that every American is included.") ("*RMGO I*"); *accord Bruen*, 142 S. Ct. at 2134 ("It is undisputed that petitioners Koch and Nash—two ordinary, law-abiding, adult citizens—are part of 'the people' whom the Second Amendment protects."). Defendant does not contest this point. And Defendant does not question that Plaintiffs are in fact responsible, law-abiding adult American citizens.

Separately, Plaintiffs maintain Article III standing to pursue their complaint and their motion for a preliminary injunction. Defendant conspicuously does not contest standing in its brief, but federal courts must nevertheless assure themselves of standing. As Plaintiff Garcia will testify at the hearing, she is a frequent purchaser of firearms, and will purchase another firearm on October 25, 2023. (Meaning that she will be within the 3-day waiting period at the time of the hearing on October 26). She will also testify regarding her planned purchase of additional firearms in the near future, including a planned purchase of a shotgun in November. Future firearms purchases are also absolutely certain to occur, given that Plaintiff Garcia is actively involved in the firearms industry as an instructor, firearms reviewer, and social media presence on Second Amendment topics.

As RMGO Director Taylor Rhodes will testify at the hearing, Plaintiff RMGO has numerous members, including members named in the complaint, who have purchased and will purchase additional firearms, subjecting themselves to the 3-day waiting period. Indeed, it is estimated that at least one RMGO member purchases at least one firearm every week. These facts, once established, are sufficient to confer standing. *Accord Rocky Mountain Gun Owners v. Polis*, No. 23-cv-01077-PAB-NRN, 2023 WL 5333771, at *2 (D. Colo. Aug. 18, 2023) ("*RMGO II*") (noting that the plaintiffs' "intent to purchase firearms" was sufficient to establish standing at the preliminary injunction phase); *id.* at *2 (relying "on the Individual Plaintiffs' declarations to establish that they had plans to engage in conduct that violated SB23-169 for the purposes of a

preliminary injunction."); *see also Teter v. Lopez*, 76 F.4th 938, 945 (9th Cir. 2023) (a limitation on the Second Amendment-protected "ability to acquire arms" suffices to establish standing); *id.* at 946 (exact dates for "the acquisition and possession of butterfly knives" were not required, even in a pre-enforcement challenge).

**B.      A Waiting Period is a Firearms Regulation, Implicating *Bruen*'s Step 1.**

By enacting C.R.S. § 18-12-115, Colorado has targeted the ability of purchasers of firearms to actually obtain those firearms, despite having already passed a background check and satisfied all other necessary requirements. C.R.S. § 18-12-115(1)(a)(I) ("It is unlawful for any person who sells a firearm … to deliver the firearm to the purchaser until … [t]here days after a licensed gun dealer has initiated a background check of the purchaser that is required pursuant to state or federal law."). In short, the law is triggered by a firearms purchase, and is a ban on the "deliver[y]" of that firearm to an individual. Indeed, that is the point. *See, e.g.*, Dkt. No. 18-1, at 2 ("One study estimates that mandatory waiting periods to receive firearms led to a 7 to 11 percent reduction in suicides by firearm."); *id.* (declaring that "[d]elaying immediate access to firearms by establishing a waiting period for receipt of firearms can help prevent impulsive acts …"); Dkt. No. 18, at 1 (conceding that the goal of the waiting period is to prevent "individuals going out and purchasing a gun to immediately use in a moment of passion").

**(1)      C.R.S. § 18-12-115 is not presumptively lawful merely because it is triggered by commercial activity.**

First, Defendant advances the absurd proposition that a "waiting period" law that is specifically designed to delay obtaining a firearm is actually a law merely regulating commercial sales, as though the statute simply targets a firearm seller's right to engage in certain financial transactions. Defendant goes so far as to suggest that all commercial regulations fall outside the

scope of the Second Amendment. Dkt. No. 18, at 7 ("The Act does not regulate Plaintiff Garcia's conduct or any other firearm owner's conduct.").

The argument is silly; indeed, if accepted, it would mean that Colorado could impose 100-year waiting periods before a seller may "deliver" a firearm to its rightful owner. Or Colorado could bar sellers from delivering any firearm whatsoever to 18-20 year olds. *See contra RMGO I*, 2023 WL 5017253, *12-13 (collecting cases) ("<u>The Court agrees with the Individual Plaintiffs that the Second Amendment includes the right to acquire firearms</u> and, therefore, protects the Individual Plaintiffs' proposed conduct.") (emphasis added). Or suppose that all firearms sellers had to deliver a purchased firearm a minimum of 200 miles from the purchaser's primary residence. Or that sellers could sell only those magazines that hold one round each. *See contra Rocky Mountain Gun Owners v. Board of County Commissioners of Boulder County*, No. 1:22-cv-02113-CNS-MEH, 2022 WL 4098998, *1 (D. Colo. Aug. 30, 2022) (enjoining Boulder County's ordinance prohibiting the "sale and purchase of assault weapons, large capacity magazines, and trigger activators."). And *Bruen* itself would serve little purpose under Defendant's theory: states could make an end-run around the Second Amendment by simply prohibiting firearms sellers from delivering firearms, bullets, or other materiel to individuals who have concealed carry licenses.

Most recently, in *RMGO I*, this Court enjoined Colo. Rev. Stats. § 18-12-112, which states in part: "A person who is a licensed gun dealer shall not make or facilitate <u>the sale</u> of a firearm to a person who is less than twenty-one years of age." *See RMGO I*, 2023 WL 5017253, at *2 (emphasis added). The statute, of course, relates to a commercial transaction involving a "sale;" yet the Court in *RMGO I* nevertheless enjoined the statute, holding that the Plaintiff had established a strong likelihood of success. And C.R.S. § 18-12-115 is even more vulnerable than the statute

that was enjoined in *RMGO I*. Indeed, the waiting period is <u>not</u> part of a commercial transaction. It targets the "delivery," of a firearm <u>after</u> a purchase, not on the underlying "sale" of that firearm. By the time that the waiting period has begun, the commercial transaction has been completed already: money has been exchanged, and ownership of a firearm has passed title. *See* C.R.S. § 18-12-115(1)(a)(I) (referring to a "background check of the <u>purchaser</u>," not at the previous point of sale) (emphasis added).

The Fourth Circuit addressed a similar argument in the context of 18-20 year olds, distinguishing laws that regulate sellers from laws whose true impact is on purchasers. *See Hirschfeld v. Bureau of Alcohol, Firearms, Tobacco & Explosives*, 5 F.4th 407, 416 (4th Cir. 2021) (*vacated as moot*, 34 F.4th 14 F.4th 322). ("A condition or qualification on the sale of arms [by sellers] is a hoop someone must jump through to <u>sell</u> a gun, such as obtaining a license, establishing a lawful premise, or maintaining transfer records.") (original emphasis). By contrast, restrictions that operate as a flat bar on a purchaser's right to obtain a gun are not "conditions and qualifications on the sale of arms." This Court ought to reach the same conclusion here.

### (2) C.R.S. § 18-12-115 implicates the plain text of the Second Amendment.

Second, Defendant asserts that Plaintiffs do not have an interest covered by the Second Amendment. But that, too, is erroneous. The Second Amendment's plain text applies to "an individual's conduct" of <u>obtaining</u> a firearm. *See Bruen*, 142 S. Ct. at 2134 ("[T]he 'textual elements' of the Second Amendment's operative clause—'the right of the people to keep and bear Arms, shall not be infringed'—guarantee[s] the individual right to <u>possess</u> and carry weapons <u>in case of confrontation</u>.") (emphasis added, cleaned up). It is indisputable that the right to possess arms cannot be exercised unless individuals have the right to obtain them, in the same sense that the right to publish a newspaper is meaningless without the right to obtain paper or ink. *See*

*Teixeira v. Cnty. of Alameda*, 873 F.3d 670, 677 (9th Cir. 2017) ("The core Second Amendment right to keep and bear arms for self-defense wouldn't mean much without the ability to acquire arms.") (*quoting Ezell v. City of Chi.*, 651 F.3d 684, 704 (7th Cir. 2011)); *Bruen*, 142 S. Ct. at 2156 ("New York's proper-cause requirement violates the Fourteenth Amendment in that <u>it prevents law-abiding citizens with ordinary self-defense needs from exercising their right to keep and bear arms</u>.").

Courts that have addressed this issue since *Bruen* squarely hold the same. *See, e.g.*, *McRorey v. Garland*, No. 7:23-cv-00047-O, 2023 WL 5200670, *3 (N.D. Tex. Aug. 14, 2023) ("Plaintiffs have sufficiently shown that their conduct is covered by the Second Amendment, leaving only the question of whether the Government can justify [waiting time connected to background checks] with the requisite historical analogues."); *Connecticut Citizens Defense League, Inc. v. Thody*, — F. Supp. 3d —, 2023 WL 2687446, *12 (D. Conn. Mar. 28, 2023) (plaintiffs' claim for declaratory relief that they were entitled to "obtain" a firearm was moot in light of *Bruen*, which unequivocally protected that right); *RMGO I*, 2023 WL 5017253, at *13 ("The Court has found that the Individual Plaintiffs' proposed course of conduct, purchasing firearms for self-defense in the home, is covered by the plain text of the Second Amendment."); *see also Silvester v. Becerra*, 138 S. Ct. 945 (2018) (Mem.) (Thomas, J., dissenting from denial of certiorari) (stating that a Ninth Circuit decision upholding a 10-day waiting period was "symptomatic of the lower courts' general failure to afford the Second Amendment the respect due an enumerated constitutional right.").

And it is intuitive that Constitutional rights necessarily protect "those closely related acts necessary to their exercise." *Luis v. United States*, 578 U.S. 5, 26 (2016) (Thomas, J., concurring in the judgment); *see also Pavan v. Smith*, 582 U.S. 563, 566 (2017) (summarily reversing the

Arkansas Supreme Court's conclusion that *Obergefell v. Hodges*, 576 U.S. 644 (2015), protected only same-sex marriage, but did not protect same-sex couples' rights to be named on their children's birth certificates). Under *Bruen*, obtaining a firearm is "individual conduct" that is protected by the Second Amendment, in the sense that one cannot keep or bear an arm "in case of a confrontation" that an individual does not obtain, despite having purchased it and being otherwise entitled to it.

Defendant attempts to elide this conclusion by mis-framing the individual conduct here as the right to "immediate acquisition" of a firearm. *See* Dkt. 18, at 7. But that is a sleight of hand. First, as a factual matter, the premise is off. HB23-1219 does not prevent Coloradans from purchasing arms, or "acquiring" them in the legal sense of ownership. Instead, it bars Coloradans from obtaining arms that they have already acquired legal rights to. In other words, C.R.S. § 18-12-115(1)(a)(I) states that after title to a firearm has passed to the buyer, the person who has already purchased the firearm is not entitled to take possession of her property. Instead, the statute requires the seller to maintain possession of the buyer's property during the waiting period. Second, as an analytical matter, it would be absurd to conclude that an individual may keep and bear arms "in case of a confrontation"—including in situations where a purchase knows that an imminent confrontation may occur—but has no right to obtain that firearm in the first place. The phrase "keep arms" in the Second Amendment means "possessing arms." *See District of Columbia v. Heller*, 554 U.S. 570, 583 (2008). An individual cannot possess something "in case of a confrontation" that must be held by another person. Thus, because HB23-1219 prohibits Coloradans from obtaining (*e.g.*, possessing) arms that they have already legally acquired, it burdens their Second Amendment right to keep arms.

Defendant cites *Defense Distributed v. Bonta*, No. CV 22-6200-GW-AGRx, 2022 WL 15524977 (C.D. Cal. 2022), which holds that *Bruen* does not encompass any Second Amendment "penumbra" that extends to protecting the self-manufacture of firearms. See *Defense Distributed* at *4; *id.* at 3 ("AB 1621 has nothing to do with "keeping" or "bearing" arms."). But *Defense Distributed* involved certain milling machines, and the ancillary tools necessary to build a firearm. The court, moreover, did not hold that the text of the Second Amendment is never implicated by an individual who wants to obtain a firearm. Nor could it have. California is in the Ninth Circuit, and that Court has held on multiple occasions that the Second Amendment extends to obtaining arms. *See Teixeira v. Cnty. of Alameda*, 873 F.3d 670, 677 (9th Cir. 2017) and *Jackson v. City & Cnty. of San Francisco*, 746 F.3d 953, 968 (9th Cir. 2014) ("Thus the right to possess firearms for protection implies a corresponding right to obtain the bullets necessary to use them.") (internal quotation marks omitted). And in *Heller*, the Court went out of its way to criticize a District of Columbia law that related to "obtaining" a gun. *See Heller*, 554 U.S. at 631 ("The District law, by contrast, far from imposing a minor fine, threatens citizens with a year in prison (five years for a second violation) for even <u>obtaining</u> a gun in the first place.") (emphasis added).

Defendant also contends that Plaintiffs' Second Amendment rights have not been infringed because the law does not apply to all arms transfers. Dkt. No. 18, at 8. The point of Defendant's argument seems to be that unless it completely obliterates a person's Second Amendment rights, it has not infringed those rights. That is not correct. *Bruen*, for instance, did not ask whether New York completely obliterated the Second Amendment right to carry a firearm. *See Bruen*, 142 S. Ct. at 2125 (describing both plaintiffs as having the right to carry a firearm for target shooting and hunting, and even noting that one plaintiff was permitted to carry a firearm to and from work, while neither was allowed to carry a firearm for general self-defense purposes).

Instead, the Court asked only whether the Second Amendment's text covered "carrying handguns publicly for self- defense." *Bruen*, 142 S Ct. at 2134. Thus, even though New York did not completely bar the practice of carrying firearms, but instead subjected it to a discretionary licensing regime, the text of the Second Amendment was nevertheless implicated. In this case, the waiting period does not apply to all avenues for the acquisition of firearms, only the most important one—purchase and obtaining. *Cf. Heller*, 554 U.S. at 629 (leaving options open in one area "is no answer" to closing them in another). This burden on Plaintiffs' right to keep and bear arms thus certainly implicates the text of the Second Amendment.

## C.   There is No Historical Analogue to Colorado's 3-Day Waiting Period, So Defendant Cannot Prevail at *Bruen* Step 2.

Because the text of the Second Amendment covers Plaintiffs' conduct, HB23-1219 is presumptively unconstitutional. *Bruen*, 142 S. Ct. at 2129-30. The burden therefore shifts to Defendant to attempt to rebut that presumption by demonstrating that its arbitrary 3-day delay— which will generally extend beyond the time necessary to conduct a background check—is consistent with the Nation's historical tradition of firearms regulation. *Id.*; *see also Vincent v. Garland*, 80 F.4th 1197, 1203 (10th Cir. 2023) (Bacharach, J., concurring) ("In determining whether historical analogues exist, we consider English views dating from the late seventeenth century, the Founders' views in the run-up to adoption of the Second Amendment, and the interpretation of the Second Amendment from its ratification through the end of the nineteenth century.").

But circuit courts have recognized that "the *Bruen* standard for identifying a closely analogous historical regulation is a demanding one." *Baird v. Bonta*, 81 F.4th 1036, 1046 (9th Cir. 2023); *see id.* at 1047 ("California must identify a historical analogue that curtails the right to peaceably carry handguns openly for self-defense to a comparable degree, with a comparable

severity, and <u>with a comparable blanket enforcement</u> to California's open-carry ban.") (emphasis added). To go further, when a challenged regulation addresses a general societal problem that has persisted since the 18th century, "the lack of a distinctly similar historical regulation addressing that problem is relevant evidence that the challenged regulation is inconsistent with the Second Amendment." *Bruen*, 142 S. Ct. at 2131.

As just one example, statutes banning the carrying of firearms "while under the influence" have been held to not be analogous to a modern ban on carrying by "unlawful users" of intoxicants, because "there is a considerable difference between someone who is actively intoxicated and someone who is an 'unlawful user.'" *See United States v. Daniels*, 77 F.4th 337, 347 (5th Cir. 2023); *see also Atkinson v. Garland*, 70 F.4th 1018, 1022 (7th Cir. 2023) ("Remember what the Court itself did in *Bruen* after rejecting a means-end approach and announcing the text-and-history standard—it rolled up its sleeves and examined a wealth of laws and commentary spanning several centuries, paying close attention to the enforcement and impact of various regulations."); *RMGO II*, 2023 WL 5333771, *3 (D. Colo. Aug. 18, 2023) ("[A] prohibition on purchasing a firearm is not the same as a prohibition on discharging or possessing a firearm.").

"In some cases, [the historical] inquiry will be fairly straightforward. For instance, when a challenged regulation addresses a general societal problem that has persisted since the 18th century, the lack of a distinctly similar historical regulation addressing that problem is relevant evidence that the challenged regulation is inconsistent with the Second Amendment." *Bruen*, 142 S. Ct. at 2131. In *Heller*, Washington D.C.'s flat ban on the possession of handguns was a regulation that the Founders themselves could have adopted to confront the social problem that the City identified, *i.e.* handgun violence in urban areas. *Bruen*, 142 S. Ct. at 2131. And since none of

the founding era regulations identified by Washington D.C. was analogous to its ban, the ban was unconstitutional.

Undeterred by binding case law, Defendant begins its historical analysis by arguing that regulations relating to intoxicated persons are analogous to a law that prohibits every buyer from obtaining possession of their firearm, even when no reason for doing so has been identified. This is error, because *Bruen* expressly points to two metrics that are important in determining whether a historical regulation is analogous to a challenged regulation. Those are the "how and why the regulations burden a law-abiding citizen's right to armed self-defense." *Id.* at 2132-33; *see also id.* at 2133 ("[W]hether modern and historical regulations impose a comparable burden on the right of armed self-defense and whether that burden is comparably justified are 'central' considerations when engaging in an analogical inquiry."). Here, quite obviously, a law barring only intoxicated individuals from obtaining firearms while they are intoxicated is not "how" HB23-1219 works, given that the law applies to all Colorado citizens. *See, e.g.*, *Teter*, 76 F.4th at 952 ("[T]he 'how' of the proffered state statutes is different—they regulate different conduct.").

Unsurprisingly, Defendant's reliance on regulations of intoxicated person also manifestly fails the "why" metric. Regulations of intoxicated persons are justified because those persons are obviously a danger to themselves and to others. That is the "why" justifying the regulations. But HB23-1219 deprives <u>everyone</u> of the possession of arms that they have purchased without any inquiry, much less resolution, of the question of whether a particular person poses a threat to anyone. Indeed, as noted above, Defendant does not contest that Plaintiffs are responsible, law-abiding adult American citizens, as is every person injured by HB23-1219. Indeed, the law's "why" is different because it injures those who have already passed a background check, and are therefore presumably not a threat to anyone. That is, after all, the purpose of background checks.

Thus, regulations of intoxicated persons are of no relevance in this case. *Accord Bruen*, 142 S. Ct. at 2133-34 (recognizing that historical restrictions on firearms existed in "sensitive places," but nevertheless rejecting the notion that "all places of public congregation" sufficed as an analogue); *id.* at 2140 (rejecting the idea that medieval restrictions on lances could suffice as a historical analogue even to restrict daggers).

To buttress the point, in *United States v. Connelly*, NO. EP-22-CR-229(2)-KC, 2023 WL 2806324 (W.D. Tex. Apr. 6, 2023), the plaintiffs challenged a statute that prohibited users of intoxicants from possessing firearms (even when they were not actually intoxicated). The court held that the law violated the plaintiffs' Second Amendment rights. In so doing, the court rejected many of the proposed analogues advanced by Defendant in this case. The court held that the laws were not analogous because the historical laws prevented individuals from using firearms while actively intoxicated, while the challenged statute prevented users of intoxicants from possessing firearms altogether. *Id*. at *7. The court held that prohibiting someone who has used drugs in the last year from keeping arms for self-defense is not analogous to preventing people from shooting their guns while intoxicated. *Id*. *A fortiori*, a law that prevents law-abiding citizens who have done nothing wrong from possessing the arms that they have acquired is not analogous to a law that bans people from shooting guns while intoxicated.

Defendant argues that the intoxicated-person laws are analogous to HB23-1219 because the statute prevents impulsive firearms violence. And if HB23-1219 were limited to firearm purchasers for whom there was some reason to believe they might not be thinking clearly, Defendant might have a point. But is not. Instead, with respect to the overwhelming number of law-abiding citizens affected by HB23-1219, there will be no reason to think that they are impaired

at all. Thus, a law specifically targeted at an obviously dangerous situation is not analogous to a law that sweeps up everyone, including a teetotaler who has never had a drink in her life.

Moreover, Defendant's own arguments undermine their position. Defendant contends that there is a long history of laws directed at "preventing impulsive acts of firearm violence." Dkt. No. 18, at 14. Yet despite the apparent long history of social concerns about "impulsive" crimes with firearms, Defendant cites no waiting period law that pre-dates 1923. Without more, this is dispositive under *Bruen*'s Step 2. *Bruen*, 142 S. Ct. at 2131 ("[I]f earlier generations addressed the societal problem, but did so through materially different means, that also could be evidence that a modern regulation is unconstitutional.").

As if it were relevant information, Defendant explains this deficiency by saying (1) that practical circumstances made it so that firearms were not readily obtainable anyway; and (2) that such laws only came into vogue when state actors recognized that firearms were becoming more easily obtained. Defendant does not explain how either of these arguments fits in with *Bruen*. Certainly, the Supreme Court did not announce a "practical circumstances" exception to its logic. And Defendant's concession that waiting period laws only started emerging more recently is precisely the point that Plaintiffs make—that there is no historical analogue to Colorado's current law.

Moreover, Defendant fails to advance arguments about any other "arms," which might have been more available than firearms before 1923. *Accord Teter*, 76 F.4th at 952-53 (considering the history of bans on concealed bowie knives, dirks, daggers, and other deadly weapons). Not once does Defendant point to a waiting period on any "arm" encompassed within the Second

Amendment, particularly one that extends beyond the period when an individual might be intoxicated or discovered to be dangerous—like a background check works today.[2]

**D.   Defendant's Public Policy Arguments Have No Relevance to *Bruen*'s Test of Constitutionality, and Such Arguments Should be Excluded from Evidence.**

The Defendant's public policy arguments are not relevant to this case. The Supreme Court specifically held in *Bruen*:

> To justify its regulation, the government may not simply posit that the regulation promotes an important interest. Rather, the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation. Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command."

*Bruen*, at 2126. Here, Defendant partially attempts to rely on policy arguments, on the apparent hope that it can guilt the Court into denying Plaintiffs' motion. But to the extent that Defendant or its experts intend to introduce evidence regarding the need, effectiveness, or positive results of the waiting period at issue, the evidence should be excluded as irrelevant.

**E.   The Other Preliminary Injunction Factors Favor Plaintiffs.**

Because HB23-1219 violates the Second Amendment, Plaintiffs suffer irreparable injury as long as it is in place, and with every firearm that they purchase, until a preliminary injunction is granted. *See Free the Nipple-Fort Collins v. City of Fort Collins, Colorado*, 916 F.3d 792, 806

---

[2] Defendant does not cite *McRorey*, 2023 WL 5200670. Rightfully so. In that case, the District Court noted that a waiting period might be constitutional, if it merely relates to the question of whether an individual is a felon or mentally ill—information that is turned up in a background check. *See McRorey*, 2023 WL 5200670, at *4 ("The *Bruen* majority therefore seems to acknowledge the facial constitutionality of regimes requiring background checks and attendant waiting periods to ensure a potential purchaser is not prohibited from exercising Second Amendment rights."). By contrast, Colorado's law has no purpose connected to determining whether an individual is a legal purchaser of a firearm. It applies to everyone, and it applies even after the background check reveals that a purchaser is fully entitled to purchase a firearm. *Contra McRorey*, 2023 WL 5200670, *5 ("[T]he Supreme Court has also noted that some wait time is permissible to ensure that those prohibited are unable to obtain firearms.").

(10th Cir. 2019) ("What makes an injury 'irreparable' is the inadequacy of, and the difficulty of calculating, a monetary remedy after a full trial. Any deprivation of any constitutional right fits that bill."); *Verlo v. Martinez*, 820 F.3d 1113, 1127 (10th Cir. 2016) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). Accordingly, "[w]hen an alleged deprivation of a constitutional right is involved, ... most courts hold that no further showing of irreparable injury is necessary." *See* 11A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2948.1 (3d ed. 1998).

Additionally, when the government is the opposing party, the final two preliminary injunction factors—the balance of equities and the public interest—merge. *See Nken v. Holder,* 556 U.S. 418, 435 (2009)). Here, protection of constitutional rights against governmental infringement on those rights is always in the public interest. *See Awad v. Ziriax*, 670 F.3d 1111, 1132 (10th Cir. 2012) ("[W]e agree with the district court and the Sixth Circuit that it is always in the public interest to prevent the violation of a party's constitutional rights."). And there is no possible policy argument that could outweigh the need to protect the constitutional rights of responsible, law-abiding adult American citizens. (And any attempt to introduce such evidence should be excluded). *See Bruen*, 142 S. Ct. at 2131 ("It is this balance—struck by the traditions of the American people—that demands our unqualified deference.").

## Conclusion

HB23-1219 is an innovation. In the 147 years from August 1, 1876, to August 8, 2023, no such law has appeared in Colorado's statute books. Plaintiffs do not seek to overturn a longstanding statute. Instead, they seek to prevent a newly enacted law that infringes on their constitutional rights from injuring them further. For these reasons, the Court should grant Plaintiffs' request for a preliminary injunction, pending discovery and trial.

DATED this 20th day of October 2023.

Respectfully submitted,

*/s/ D. Sean Nation*
D. Sean Nation
Brian A. Abbas
William E. Trachman
MOUNTAIN STATES LEGAL FOUNDATION
2596 South Lewis Way
Lakewood, Colorado 80227
Tele:: (303) 292-2021
Fax:   (877) 349-7074
Email: snation@mslegal.org
babbas@mslegal.org
wtrachman@mslegal.org
*Attorneys for Plaintiffs Rocky Mountain Gun Owners and Alicia Garcia*

## CERTIFICATE OF SERVICE

I hereby certify that on this 20th day of October 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of this filing to all counsel of record.

*/s/ D. Sean Nation*
D. Sean Nation