# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:23-cv-02563-JLK

ROCKY MOUNTAIN GUN OWNERS, and
ALICIA GARCIA,

      Plaintiffs,

v.

JARED S. POLIS, in his official capacity as Governor for the State of Colorado,

      Defendant.

---

## THE GOVERNOR'S REPLY IN SUPPORT
## OF HIS MOTION FOR SUMMARY JUDGMENT

---

## INTRODUCTION

Colorado's Waiting Period Law, Colo. Rev. Stat. § 18-12-115, saves lives—approximately 100 Coloradans live on each year because of it. *See* ECF No. 63-1, Ex. 1, Report & Decl. of Poliquin, ¶¶ 11, 16 (through 52 fewer gun homicides and 48 fewer gun suicides per year). The Waiting Period Law does not prevent gun possession or acquisition; it simply requires a modest three-day delay in securing possession of the gun, by way of imposing a commercial regulation—presumptively lawful—on sellers. Plaintiffs offered *no* evidence that the law implicates the Second Amendment's plain text, nor that the law is being put to abusive ends. Plaintiffs' Response does not move the needle away from constitutionality. Instead, the Response proposes new arguments, relies on out-of-state cases (instead of Tenth Circuit precedent), and offers bald assertions without record support. Plaintiffs cannot succeed on their claim, and this Court should rule, as a matter of law, that the Waiting Period Law is constitutional under the Second Amendment. *See* ECF No. 32, p. 36 (ruling that Plaintiffs were unlikely to succeed on the merits).

## ARGUMENT

The Governor reaffirms all arguments made in his Motion for Summary Judgment, ECF No. 63, and Response in Opposition to Plaintiffs' Motion for Summary Judgment, ECF No. 66. This Reply addresses discrete points raised by Plaintiffs in their Response, ECF No. 67.

## I.    Plaintiffs do not have standing.

Plaintiffs assert that the Governor wants to "break new ground, and avoid the merits, by disposing of the case on the basis of standing." ECF No. 67, p. 10. But standing is a threshold issue, which must be resolved first *before* reaching the merits because otherwise a federal court

does not have jurisdiction. *See Colo. Outfitters Ass'n v. Hickenlooper*, 823 F.3d 537, 543 (10th Cir. 2016) (federal court cannot assume Article III standing). True, this Court previously found standing as to Plaintiff Garcia, but that was absent briefing on the issue and before discovery. ECF No. 32, p. 6 & n.3 (finding standing for Plaintiff Garcia but describing RMGO's case for standing as "less developed"). And a sister court in this jurisdiction rejected RMGO's organizational standing in an analogous capacity. *See Rocky Mountain Gun Owners v. Polis*, 685 F. Supp. 3d 1033, 1044–45 (D. Colo. 2023) (Brimmer, C.J.), *rev'd and remanded on other grounds*, 121 F.4th 96 (10th Cir. 2024). It is Plaintiffs' burden to establish standing for federal jurisdiction purposes. *Radil v. Sanborn W. Camps, Inc.*, 384 F.3d 1220, 1224 (10th Cir. 2004).

### A. Plaintiff Garcia does not have standing.

Plaintiff Garcia fails to demonstrate standing. In denying Plaintiffs' request for a preliminary injunction, this Court held that Plaintiff Garcia had standing based on her testimony that she has made additional trips to obtain firearms and has missed out on business opportunities, specifically in connection with an October 2023 shotgun shoot. ECF No. 32, p. 6; ECF No. 30, Prelim. Inj. Hr'g Tr. 10-26-23 at 19:17-22:5. But since then, Plaintiff Garcia testified that she knew about her then-upcoming shotgun shoot well in advance of the three days necessary to acquire a firearm; she simply did not act. ECF No. 63-3, Ex. 3, Garcia Dep. Tr. 97:14-98:3 (Garcia "knew of the event like a week or so before the event"). Any resulting injury is one of her own making, since she had enough time to acquire the gun regardless of the Waiting Period Law. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416 (2013) (Plaintiffs "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending."). Further, the Waiting Period Law does

not interfere with her Second Amendment right to self-defense because, as discussed below, the Second Amendment does not enshrine a right to *immediately* acquire a firearm and Plaintiff Garcia *already owns* dozens of firearms,[1] ECF No. 63-3 at 23:18-22 (acknowledging owning "twenty to thirty" guns), any one of which satisfies the "'central component' of the Second Amendment right," the right to "individual self-defense." *McDonald v. City of Chicago*, 561 U.S. 742, 767 (2010) (quoting *Dist. of Columbia* v. *Heller*, 554 U.S. 570, 599 (2008)). Plaintiff Garcia has not met her burden to establish standing.

**B. Plaintiff RMGO does not have standing.**

In a prior iteration of this challenge, brought before the Waiting Period Law went into effect, the district court determined RMGO had not established standing because it had neither identified members who had suffered the requisite harm nor had it established that *all* its members want to challenge the law. *See Rocky Mountain Gun Owners v. Polis*, No. 23-cv-01076-PAB-NRN, 2023 WL 5017257, at *3 (D. Colo. Aug. 7, 2023) (Brimmer, C.J.) (not reported). The same is true now.

RMGO concedes the Waiting Period Law has not prevented it from carrying out its essential purpose, goals, or mission, ECF No. 67, pp. 8-9 ¶¶ 80, 80.a, 80.b, 15-16, as required to establish organizational standing, *see Havens Realty Corp. v. Coleman*, 455 U.S. 363, 378-79 (1982). It instead asserts that the Waiting Period Law has "hindered" its ability to conduct its mission in that RMGO cannot immediately raffle or give away guns to members or as holiday gifts to employees. ECF No. 67, pp. 8-9, ¶¶ 80, 80.a, 80.b (citing ECF No. 67-2, Pls.' Ex. B,

---

[1] In connection with this case, the Governor is *not* suggesting that there is a ceiling on the number of guns one may possess, only that the Waiting Period Law does not meaningfully interfere with Plaintiff Garcia's ability to defend herself sufficient to demonstrate standing.

Rhodes Dep. Tr. 48:11-51:8). But, under *Havens Realty Corp.*, "hinder" is not enough. *See* 455 U.S. at 378. Isolated incidents that "hinder" are not evidence, or even meaningful argument, that the Waiting Period Law has made it difficult for RMGO to fulfill any of its *essential* goals or caused a drain on its resources, and RMGO's 30(b)(6) representative admitted that the Waiting Period Law "does not prevent" RMGO's mission of advocacy, educating citizens, or defending the right to keep and bear arms. ECF No. 63-4, Ex. 4, Rhodes Dep. Tr. 48:5-21. Accordingly, RMGO has not established standing in its own right. *See also Rocky Mountain Gun Owners*, 685 F. Supp. 3d at 1044-45 (recognizing RMGO failed to establish organizational standing for its challenge to SB23-169, Colorado's minimum-age law).[2] And raffles and giveaways are not core organizational functions, nor does RMGO allege they are.

Neither has RMGO shown that any individual members have standing to sue in their own right. Although RMGO offered J.H. and S.H. as individual members,[3] neither asserted being impacted by the Waiting Period Law or a definite intent to purchase guns in the future. ECF No.

---

[2] Other sister district courts likewise have held that RMGO lacked standing to challenge firearm restrictions in its own right. *See Nat'l Ass'n for Gun Rts. v. Polis*, No. 24-cv-00001-GPG-STV, 2024 WL 3085865, at *9 (D. Colo. May 2, 2024) (holding RMGO did not establish standing "in [its] own right" where it did not show a Colorado firearm law made it "difficult or impossible for [it] to fulfill any of [its] essential goals or purposes") (Gallagher, J.) (not reported), *appeal pending* 24-1209; *Rocky Mountain Gun Owners v. Town of Superior*, No. 22-cv-02680-NYW-JPO, 2024 WL 4427765, at *8 (D. Colo. Sept. 30, 2024) (holding RMGO lacked standing in its own right where it failed to show ordinances restricting assault weapons and large capacity magazines "make it difficult or impossible for the organizations to fulfill any of their essential goals or purposes") (Wang, J.) (mem.).

[3] "J.H." was inadvertently referenced as "B.H." in the Governor's Motion for Summary Judgment, ECF No. 63, p. 47 ¶¶ 81-82 (there originally were three parties identified by initials in the initial, including "B.R.," who RMGO withdrew, *see* ECF No. 63-4 at 80:4-8, along with J.H. and S.H., ECF No. 1, p. 2 ¶ 1), but was correctly identified in the Governor's Response, ECF No. 66, pp. 2-3, 17 & n.1. In all other respects, the citations in the Governor's Motion for Summary Judgment are correct.

63, p. 47 ¶¶ 81-82 (detailing how J.H. and S.H. had not been prevented from purchasing a gun, did not appear to have specific plans to buy a gun, had not been cited for violating the Waiting Period Law, and had not filed declarations at all); *see Summers v. Earth Island Inst.*, 555 U.S. 488, 499 (2009) ("Without individual affidavits, how is the court to assure itself that the organization, for example, has 'thousands of members' who would be affected by the law?") (cleaned up); *accord* ECF No. 32, pp. 6-7 n.3 (recognizing that the individuals identified by initial in the complaint did not provide sworn testimony or affidavits); *cf. Rocky Mountain Gun Owners*, 685 F. Supp. 3d at 1044-45 (recognizing same standing deficiencies for RMGO for Colorado's minimum-age law). Further, as the Governor explained in the Response in Opposition to Plaintiffs' Motion for Summary Judgment, Mr. Rhodes was never presented as a plaintiff or an individual plaintiff for RMGO; rather, he was its corporate 30(b)(6) representative. *See* ECF No. 66, pp. 2-3; *see also* ECF No. 1, p. 2 ¶ 1; ECF No. 2-3 (Rhodes declaration); ECF No. 30 at 34:25-35:1 (Rhodes's preliminary injunction testimony that he was not personally a plaintiff).

Finally, Plaintiffs note that if one plaintiff has standing, the court can proceed to the merits. ECF No. 67, p. 16 (citing *Am. Atheists, Inc. v. Davenport*, 637 F.3d 1095, 1114 (10th Cir. 2010)). But, following the Supreme Court's recent holding in *Trump v. CASA, Inc.*, that principle may no longer be so settled, as it appears each plaintiff must have standing to seek relief on their own behalf. *See* 2025 WL 1773631, at *11 (U.S. June 27, 2025) (rejecting universal injunctions and identifying the question as "not whether an injunction offers complete relief to *everyone* potentially affected by an allegedly unlawful act; it is whether an injunction will offer complete relief *to the plaintiffs before the court*" and explaining that extending an

injunction for an individual plaintiff to cover all other similarly situated individuals would not render individual plaintiff's relief any more complete) (emphasis in original). Consequently, the Court should resolve RMGO's standing, too.

**II.    Plaintiffs have not carried their burden on *Bruen* step one.**

Plaintiffs bear the burden on *Bruen*'s first step. Summary judgment in the Governor's favor is warranted because the Waiting Period Law does not implicate the plain text of the Second Amendment and it is a proper condition on and regulation of the sale of firearms.

**A.   The Waiting Period Law does not fall within the Second Amendment's plain text.**

Plaintiffs bear the burden to show that the Second Amendment's text, "as informed by history," encompasses the conduct in which they seek to engage. *NY State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 17, 19 (2022). A regulation "falls within the ambit of the Second Amendment only if the regulation 'infringes' the Second Amendment right to keep and bear arms." *Md. Shall Issue, Inc. v. Moore*, 116 F.4th 211, 220 (4th Cir. 2024) (en banc), *cert. denied* 145 S. Ct. 1049 (Jan. 13, 2025). A three-day waiting period does not intrude on the right to keep and bear arms.

In this case, Plaintiffs assume, without support, that the Second Amendment provides a right to the immediate purchase of firearms without delay. But Plaintiffs offer neither a historical record nor persuasive legal reasoning establishing that the plain text of the Second Amendment safeguards such a right. To the contrary, the Second Amendment's plain text does not constitutionally memorialize a right of immediate acquisition. *See McRorey v. Garland*, 99 F.4th 831, 838, 840 (5th Cir. 2024) (holding that "on its face 'keep and bear' does not include purchase" and that a 10-day waiting period is not a prohibition on possession); *Ortega v. Lujan Grisham*, 741 F. Supp. 3d 1027, 1073 (D.N.M. 2024) ("the Second Amendment's 'keep and

bear' language focuses on *retention* rather than *acquisition* of arms") (emphasis added), *appeal pending*, 24-2121. At best, any right to acquire is implied (and certainly does not include the right to immediately acquire); but an implied right is not a right reflected in the plain text. *Cf. McRorey*, 99 F.4th at 838 (implied right "not the same thing as being covered by the plain text of the amendment").

Plaintiffs argue that the Fifth Circuit's decision in *McRorey* is factually distinguishable because it upheld the constitutionality of a federal law that provided for expanded background checks of 18–21-year-olds and a corresponding delay in acquisition of up to 10 days. ECF No. 67, pp. 20-21. But any differences between the federal law upheld by *McRorey* and the Waiting Period Law are immaterial at the plain text stage. *McRorey* carefully parsed the plain text of the Second Amendment to hold that "on its face 'keep and bear' does not include purchase." *McRorey*, 99 F.4th at 838. Given this plain text holding, *McRorey* firmly supports summary judgment in the Governor's favor at *Bruen* step one.

Plaintiffs rely on the recent Ninth Circuit decision, *Nguyen v. Bonta*, No. 24-2036, 2025 WL 1718079 (9th Cir. June 20, 2025), which struck down a California law prohibiting most people from buying more than one firearm in a 30-day period.[4] Critically, *Nguyen* held that California's one-gun-a-month law was ultimately a prohibition on possession, not a delay in acquisition, and therefore directly implicated the plain text and *Bruen* step one. *See id.* The Waiting Period Law is easily distinguishable from California's law. The Waiting Period Law

---

[4] California's law was aimed at preventing straw transactions. *Nguyen*, 2024 WL 1718079, at *1. Colorado has separate laws designed to prevent straw-person transactions without limiting possession. *See, e.g.*, Colo. Rev. Stat. §§ 18-12-108.7, 18-12-111, 18-12-112, 18-12-112.5; *see also Johnson v. People*, 524 P.3d 36 (Colo. 2023) (discussing improper transfers and straw purchasers).

places no limitation on the number of arms an individual may acquire in any given period. And the Governor has not argued, as California did, that "the Second Amendment only guarantees a right to possess *a single* firearm." *Id*. at *3 (emphasis in original). Indeed, *Nguyen* recognized that unlike California's one-gun-a-month law, the 10-day waiting period regulation at issue in *McRorey* "served a presumptively valid purpose[.]" *Id*. at *4. By contrast, *Nyguen* reasoned that for "California's one-gun-a-month law, delay *itself* is the purpose." *Id.* (emphasis in original). Not so with the Waiting Period Law. The purpose of Colorado's law is *not* delay for the sake of delay. Instead, saving the lives of approximately 100 Coloradans whose lives would be lost to impulsive gun violence is the purpose of the law. ECF No. 63-1, ¶¶ 11, 16; ECF No. 18-1, pp. 1-2.

Finally, as in their Motion for Summary Judgment, Plaintiffs rely on two cases from foreign jurisdictions, but neither changes the outcome here. *See* ECF No. 67, pp. 18-19 (discussing *Beckwith v. Frey*, 766 F. Supp. 3d 123 (D. Me. 2025), and *Reese v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 127 F.4th 583 (5th Cir. 2025)); ECF No. 62, pp. 21-23 (same). The Governor's Response to Plaintiffs' motion explains why *Beckwith* and *Reese* are distinguishable. ECF No. 66, pp. 8-9. Since Plaintiffs' response breaks no new ground, the Governor refers the Court to its response at ECF No. 66, pp. 8-9.

Because Plaintiffs have not shown that the Waiting Period Law implicates the Second Amendment's plain text, summary judgment against them is appropriate. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (failure to "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial" "mandates the entry of summary judgment" against that party).

**B. The Waiting Period Law is a presumptively lawful commercial regulation.**

Plaintiffs raise several arguments as to why the Waiting Period Law is not a presumptively lawful commercial regulation, including asserting for the first time that it is not a commercial regulation at all. Each of their arguments fails.

Plaintiffs first assert that even if a law *is* a presumptively lawful commercial regulation, that would not "immunize[ it] from historical-tradition scrutiny." ECF No. 67, p. 21. But, to a large extent, that is exactly what occurs. The Tenth Circuit held that the question of whether a law is a commercial regulation, and "as such, falls outside the scope of the Second Amendment's right to 'keep and bear' arms," occurs at *Bruen* step one. *Rocky Mountain Gun Owners v. Polis*, 121 F.4th 96, 119-20 (10th Cir. 2024) ("*RMGO*"). That is a "textual analysis." *Bruen*, 597 U.S. at 20 (quoting *Heller*, 554 U.S. at 576-78). If the law does *not* implicate the plain text, then the analysis does *not* proceed to *Bruen* step two, i.e., the history and tradition inquiry. *Id*. at 18. In short, under *Bruen* step one plaintiffs must establish that the Second Amendment's text, "as informed by history," encompasses the conduct they seek to engage in. *Id*. at 19. That question is a textual one; if the commercial regulation does not implicate the plain text, then the reviewing court need not proceed to *Bruen* step two to conduct a historical tradition analysis.

Plaintiffs next assert that ownership of a firearm transfers immediately upon sale because once a purchaser passes their background check *and* pays the Federal Firearms Licensee ("FFL") the price of the firearm, that specific firearm belongs to the purchaser because the dealer cannot sell it to anyone else, since the gun's serial number is inextricably tied to the purchaser's background check. ECF No. 67, pp. 21-22. Plaintiffs cite 27 C.F.R. § 478.124[5] to confirm that

---

[5] 27 C.F.R. § 478.124(c)(4) & (f) are the specific provisions.

the background check is tied to the firearm's serial number. But that regulation does not contradict or even overlap with the Waiting Period Law; it simply conveys that a serial number is associated with the purchaser's background check. The Waiting Period Law's more-specific delayed-delivery requirement provides that acquisition of that firearm cannot occur until three days later. As this Court has recognized, Colorado law provides that transfer of a title occurs when the seller completes performance by physically delivering the goods. *See* Colo. Rev. Stat. § 4-2-401(2); *see also* ECF No. 32, pp. 15-16 (citing same).[6]

Plaintiffs further assert that, under the Uniform Commercial Code—Sales, Comment to § 4-2-101, "legal consequences" follow directly from the contract and action "without resorting to the idea of when property or title passed or was to pass as being the determining factor." ECF No. 67, p. 22. There are four problems with relying on this Comment. First, it is a comment, not statutory law.[7] Second, the comment is to the "Official Uniform Commercial Code," "***not*** to the [Colorado] state version." § 4-2-101, Uniform Commercial Code Comment (emphasis in original).[8] Third, section 4-2-401(2) explicitly provides for the passage of title upon physical

---

[6] Plaintiffs also object that sales under Colo. Rev. Stat. § 4-2-101 may be for something intangible and thus may never actually be physically delivered. ECF No. 67, p. 27. This is a red herring, as firearms are demonstrably tangible and necessarily subject to physical delivery.

[7] Comments may serve as persuasive authority but do not displace the text of a statute. *See Int'l Mins. & Chem. Corp. v. Llano, Inc.*, 770 F.2d 879, 885 n.2 (10th Cir. 1985) (identifying comment as persuasive authority); *see also* Colo. Rev. Stat. § 2-5-102(4) (Uniform Commercial Code comments included "only for the purpose of information"); 73 Am. Jur. 2d Statutes § 95 ("Commentaries printed with general statutes, which are not enacted into law by the legislature, are not treated as binding authority by the courts in construing a statute," even if they "are to be given weight" in construing the statute.); *In re Blair*, 594 B.R. 712, 746 n.147 (Bankr. D. Colo. 2018) (recognizing that an "Official Comment is not the governing law—only the statute is").

[8] Colorado's Commercial Code is not identical to the Uniform Commercial Code, *see* § 2-5-102(4), as Colorado has added modifications and state-specific provisions to its Code, e.g., Colo.

delivery, a more-specific application than a generalized comment. *Cf.* Colo. Rev. Stat. § 2-4-205 ("special or local provision prevails as an exception to the general provision"). And fourth, the Waiting Period Law provides the even-more-specific criteria of physical delivery not being able to occur, and thus title not being able to transfer, until after three days. *See id.*

Undeterred, Plaintiffs argue that section 4-2-401(2)'s introductory clause—"Unless otherwise explicitly agreed, . . ."—means parties can agree that physical delivery is not necessary to finalize a sale. ECF No. 67, p. 22. But this argument fails for two reasons. First, no Plaintiff attempted any such explicit agreement. Second, under the plain terms of the Waiting Period Law, either (i) such an agreement could not be made, since delivery could not be effected until after three days and thus title could not pass under section 4-2-401, or (ii) while title might pass upon explicit agreement, delivery still could not be effectuated until three days later—either way necessitating a bailment to the seller to hold the firearm. So, there's good reason to hold that title only transfers upon delivery.

Plaintiffs also argue that conditions and qualifications are things "people can actually satisfy" but since there is no way to satisfy the Waiting Period Law except to wait three days, then it cannot be imposing a condition or qualification and, by extension, cannot be a commercial regulation at all. ECF No. 67, pp. 22-23. But this new argument that the Waiting Period Law is not a commercial regulation at all, presented for the first time in their Response, fails for the simple fact that Plaintiffs offered no evidence, and certainly no expert testimony, on

Rev. Stat. § 4-2-403(1.5) (concerning livestock transfer), although section 4-2-401(2) is consistent with the Uniform Commercial Code provision, U.C.C. § 2-401(2). Regardless, Colorado explicitly recognizes that the Comments, while persuasive, are not authoritative. *See* § 2-5-102(4) ("The inclusion of said nonstatutory matter"—including "the full text of the official comment to that section"—"is only for the purpose of information[.]").

what is or is not a commercial regulation. Instead, Plaintiffs rely on a generalized definition from Black's Law Dictionary—specifically to the subsidiary definition of "condition precedent," located under the overarching definition of "condition" more broadly to support this newly raised argument. *Id*. at 23-24 (citing *Condition*, Black's Law Dictionary (12th ed. 2024)).[9] This is hardly enough to carry their step-one burden, and the argument itself has multiple shortcomings.

First, Plaintiffs conflate "condition" and "condition precedent.' A "condition precedent" requires the occurrence of something other than a lapse of time before a subsequent event can happen; but a "condition" more generally concerns a stipulation or prerequisite in a contract, will, or other instrument before the terms can be satisfied. *Condition*, Black's Law Dictionary (12th ed. 2024). In the context of the Waiting Period Law, that "condition" or prerequisite is the passage of time, specifically the three days. Similarly, a "negative condition" is a condition forbidding a party from doing a certain thing, usually as part of a larger agreement. *Condition – negative condition*, Black's Law Dictionary (12th ed. 2024). It does not exclude a "lapse of time" at all. *Id.* The Waiting Period Law could equally be viewed as a negative condition, preventing the seller from delivering the firearm until after three days, and thus satisfy the "condition" or qualification consistent with a commercial regulation. Second, a "condition" reflects a requirement imposed in order to satisfy a particular regulation. Here, that requirement is waiting three days, the passage of which necessarily satisfies the condition. In other words, the consummation of the sale is conditioned on the passage of the three days. Third, Plaintiffs neglect to engage with the definition of "qualification" at all, which Black's Law Dictionary

---

[9] Since there are multiple "conditions" defined under "condition," a more-accurate citation would be: *Condition – condition precedent*, Black's Law Dictionary (12th ed. 2024).

defines as a "modification or limitation of terms or language," especially a "restriction of terms that would otherwise be interpreted broadly." *Qualification*, Black's Law Dictionary (12th ed. 2024). In the context of a commercial regulation, a "qualification" then is a regulation that modifies, limits, or impacts the commercial act. Regardless, the "condition" or "qualification" is easily satisfied: by waiting the three days.

Plaintiffs contend *RMGO* should not control because "it did not address the same argument that is at issue here," namely that the argument in *RMGO* concerned whether the minimum-age law was a condition or qualification of *purchase*, not of *sale* as the Waiting Period Law is. ECF No. 67, p. 24. But this argument fails for two reasons. First, whether a condition or qualification is on purchase or on sale is largely immaterial—either way, it is a commercial regulation. *See RMGO*, 121 F.4th at 120. Second, *RMGO* is the law of the circuit, regardless of what the panel had argued to it. *See United States v. Baker*, 49 F.4th 1348, 1358 (10th Cir. 2022) ("[U]nless and until the holding of a prior decision is overruled by the Supreme Court or by the en banc court, that holding is the law of this Circuit *regardless of what might have happened had other arguments been made to the panel that decided the issue first.*") (quotation omitted, emphasis in original). So, *RMGO*'s holding concerning commercial regulations applying equally to laws of both sale and purchase is binding, despite Plaintiffs' preference to the contrary.

Plaintiffs assert that the Waiting Period Law cannot be a commercial regulation because it regulates all firearm sales, not just between commercial entities. ECF No. 67, pp. 25-26. But the law, by definition, regulates the selling and purchasing of firearms; in that way, it regulates the commercial transaction of firearm exchange—making it "unlawful for any person who sells a firearm" to deliver before three days have passed. § 18-12-115(1). It is immaterial whether that

occurs between private or commercial parties. It is the commercial exchange of firearms that is being regulated, irrespective of whether "non-commercial entities" are making the sale. ECF No. 67, p. 25. And, as discussed previously, the Waiting Period Law has numerous exceptions that allow for non-commercial transfers, including by members of the armed forces among family members, concerning antique firearms, and concerning situations where a background check is not required. *See* § 18-12-115(2).

Finally, Plaintiffs allege that the Waiting Period Law is abusive because it applies to all purchasers. ECF No. 67, pp. 25-26. In *RMGO*, the Tenth Circuit held that Colorado's minimum-age law—which prevents 18-to-20-year-olds from purchasing guns until they turn 21—is a presumptively lawful condition and qualification on the commercial sale of arms. 121 F.4th at 120. If a law that requires people to wait up to three years is not abusive, it is difficult to fathom how a three-day waiting period law would be.

Changing tacks, Plaintiffs suggest the law is abusive because it encompasses all citizens, not all of whom would have been found to pose a credible threat to the physical safety of others such that the entire class should be restricted.[10] ECF No. 67, p. 26. But Plaintiffs here conflate

---

[10] Plaintiffs also contend that the condition or qualification must be "longstanding" to be constitutional. But the quote from *Heller* does not support this assertion. *Heller* provided several distinct categories of regulations, only one of which it labeled "longstanding": "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms." 554 U.S. at 626-27. The phrase "longstanding prohibition" is only included in the first clause, concerning possession of firearms by felons and the mentally ill; the subsequent clauses are both set off with a comma and an introductory "or," conveying that the "longstanding prohibition" language does not carry over to the categories of firearms in sensitive places or laws imposing conditions and qualifications on the commercial sale of arms. This makes sense, since commercial regulations are first analyzed under *Bruen* step one, which asks

the categories of permissible firearms regulations. The Supreme Court has recognized multiple categories of regulations, including possession of firearms by felons and the mentally ill; laws forbidding the carrying of firearms in sensitive places (e.g., government buildings and schools); and laws imposing conditions and qualifications on the commercial sale of arms. *Heller*, 554 U.S. at 626-27; *see also United States v. Rahimi*, 602 U.S. 680, 699 (2024). Plaintiffs rely on *Rahimi* and its discussion of posing a "credible threat to the physical safety of others." ECF No. 67, p. 31 (quoting *Rahimi*, 602 U.S. at 698, 700). *Rahimi*, though, dealt with the *prohibition* on *possession* of firearms by certain individuals deemed dangerous. 602 U.S. at 690; *see also id.* at 693 (discussing provisions barring people from misusing weapons to harm or menace others); *id.* at 695-96 (discussing laws to prevent forms of violence). The Waiting Period Law, in contrast, deals with the separate category of commercial regulations on the sale and purchase of firearms, and it does not effect a *prohibition* on possession. Plaintiffs' comparison is simply apples and oranges: *Rahimi* addressed laws *disarming* or *dispossessing* one of guns, *id.* at 698, whereas the Waiting Period Law concerns a commercial regulation imposing a three-day delay but not preventing acquisition, § 18-12-115(1).

Regardless, while a commercial regulation's presumption of legality "can be overcome," this only occurs when the plaintiff can show that the challenged measures "have the effect of eliminating the ability of law-abiding, responsible citizens to acquire firearms." *Gazzola v. Hochul*, 88 F.4th 186, 195-96 (2d Cir. 2023); *see also id.* at 196 (plaintiffs must "show[] that the

---

whether the regulation first implicates the Second Amendment's plain text. Only if it does, does the inquiry proceed to whether it is based in longstanding historical tradition or have historical analogues. To require the commercial regulation be longstanding to pass step one improperly injects the step-two inquiry into the step-one plain-text analysis.

[state] law is so restrictive that it threatens a citizen's right to acquire firearms"). A three-day wait is a far cry from eliminating the ability of responsible citizens to acquire firearms. And "if a plaintiff fails to rebut this presumption of constitutionality, the plaintiff's challenge to the 'shall-issue' licensing law fails at step one, with no requirement to conduct a historical analysis under step two." *Md. Shall Issue*, *Inc.*, 116 F.4th at 223. Here, Plaintiffs have not "shown" the challenged measure has the effect of "eliminating the ability of law-abiding, responsible citizens to acquire firearms," *see Gazzola*, 88 F.4th at 195-96, nor does a three-day waiting period do so.

III.    **The Governor's historical analogues demonstrate that the Waiting Period law accords with the Nation's historical tradition of firearm regulation.**

If the Court reaches *Bruen*'s second step, it should hold that the Waiting Period Law is "consistent with the Nation's historical tradition of firearm regulation." *Bruen*, 597 U.S. at 24. The Governor's record establishes that the Waiting Period Law imposes "a comparable burden on the right of armed self-defense" as historical regulations—namely intoxication and licensing laws—and that it is "comparably justified" to those laws. *Id.* at 29; *see* ECF No. 63, pp. 28-35. These historic regulations are analogous to the Waiting Period Law because they similarly burden the right to armed self-defense in terms of "how and why." *Bruen*, 597 U.S. at 29.

Plaintiffs dispute whether the historical analogues identified by the Governor comparably burden the Second Amendment right to keep and bear arms. Specifically, Plaintiffs argue that the "analogy to historical intoxication laws runs aground on the 'how'" because "Defendant has not been able to identify an intoxication law . . . that restricted everyone's ability to carry a gun on the theory that some might carry while drunk." ECF No. 67, pp. 28-29 (emphases in original). Plaintiffs misconstrue the Governor's argument on the *how* of the historic intoxication analogues. These laws are comparable to the Waiting Period Law because they impose a limited,

short-term restriction on purchasing new firearms at times when an individual may be prone to impulsive acts of gun violence. This Court previously recognized that the "how" of these laws is alike: "The intoxication laws prevented *all* individuals from becoming intoxicated and engaging in the prohibited conduct. They did not apply only to those people who would have certainly used a firearm irresponsibly while intoxicated." ECF No. 32, p. 34 (emphasis in original). Similarly, the Waiting Period Law imposes a brief delay on all individuals prior to taking delivery of a firearm, to prevent impulsive gun homicide and suicide. *See also Vt. Fed'n of Sportsmen's Clubs v. Birmingham*, 741 F. Supp. 3d 172, 212 (D. Vt. 2024) ("Like alcohol restrictions which disarmed the populace 'only while intoxicated or while at a tavern,' the waiting period restricts the right to purchase a firearm only while purchasers are potentially primed to make impulsive decisions.").

Plaintiffs also argue that the Governor's "analogy to licensing regimes runs aground on the 'why'" because licensing laws screen those who might use a gun dangerously and whereas the Waiting Period Law does not have the same purpose because would-be purchasers have already passed a background check. ECF No. 67, p. 29. Plaintiffs disregard the stated "why" of the Waiting Period Law, which is to prevent impulsive gun homicide and suicide. *See* ECF No. 63-1, ¶ 11 & ECF No. 63-1, p. 1 ("waiting periods cause large and statistically significant reductions in homicides" and statistically significant reductions in suicide). As this Court recognized, historic licensing laws demonstrate that at the Founding and Reconstruction, Americans accepted a modest delay on the delivery of a firearm to ensure that those receiving a firearm are "law-abiding, responsible citizens." *See* ECF No. 32, pp. 34-35. Likewise, the Waiting Period Law imposes a modest delay on the delivery of a firearm to prevent individuals

from acting unlawfully and impulsively. If the Court reaches step two of *Bruen*, it should find that the Waiting Period Law is concordant with "the Nation's historical tradition of firearm regulation." *Bruen*, 597 U.S. at 24.

\*    \*    \*

There are no genuine issues of material fact as to whether the Waiting Period Law falls under the plain text of the Second Amendment. Nor is there any genuine issue of material fact as to whether the Waiting Period Law is a presumptively lawful commercial regulation. Regardless, Plaintiffs have not put forth evidence to the contrary on either point, and they have not rebutted the presumption. *Celotex Corp.*, 477 U.S. at 322-23 (where plaintiff fails to make showing of essential element, there can be no genuine issue of material fact and summary judgment is required).

And, under *Bruen* step two, which the Court need not reach, the Governor has shown that the Waiting Period Law is consistent with America's historical tradition of firearm regulation *Bruen*, 597 U.S. at 24, and similar to past firearm regulations on intoxication and licensing. Finally, in the event this Court grants Plaintiffs' requested injunction, it would only apply to Plaintiff Garcia and Plaintiff RMGO, should this Court find the organization has standing. *See CASA, Inc.*, 2025 WL 1773631, at *8-*9 (finding that "[t]he universal injunction was conspicuously nonexistent for most of our Nation's history," that "[i]ts absence from 18th- and 19th-century equity practice settles the question of judicial authority," and that "a court of equity may fashion a remedy that awards complete relief" to a party).

## CONCLUSION

This Court should grant summary judgment in favor of the Governor.

## REPLY TO CERTAIN OF PLAINTIFFS' RESPONSES TO
## THE GOVERNOR'S STATEMENT OF UNDISPUTED MATERIAL FACTS

6-9.    Plaintiffs dispute certain aspects of the Governor's facts based on argument of counsel, without citing to any factual material in support of their denial. These "[u]nsubstantiated allegations carry no probative weight in summary judgment proceedings." *Bones v. Honeywell Int'l, Inc*., 366 F.3d 869, 875 (10th Cir. 2004).

10.    Plaintiffs assert that "in more cases than not, background checks are completed within 30 minutes of submission" and cite to the testimony of their proffered expert Clayton Cramer at the preliminary injunction hearing. But Professor Cramer's testimony related only to his personal experience purchasing a firearm *in Idaho*. The relevant testimony is as follows:

> Q: Since moving to Idaho, have you purchased any firearms?
> A: Yes.
> Q: And were you subject to a background check?
> A: The federal background check through NICS.
> Q: And approximately how long did that take?
> A: I think it took about 20 -- 20 minutes. It was quick.
> Q: But not three days?
> A: No. I also have the advantage that I live in a state where if you have a concealed weapon permit, you are exempt from the federal background check. The way that the NICS is written, if you have a concealed weapon which is current and up to date in your home state, they don't have to run a background check as well.

ECF No. 30 at 51:25-52:12. Plaintiffs did not introduce evidence that "in more cases than not, background checks are completed within 30 minutes of submission," and the testimony they cite does not establish that as a fact. Further, there is no evidence that Professor Cramer's personal experience *in Idaho* is representative of background checks in Colorado, particularly because Professor Cramer testified that in Idaho, "if you have a concealed weapon permit, you are exempt from the federal background check." *Id.*

19

63-67 & 71.    Plaintiffs deny certain statistics as "based on a single study conducted with inadequate control variables," but Plaintiffs cite only argumentative questioning of counsel, not "facts." These "[u]nsubstantiated allegations carry no probative weight in summary judgment proceedings." *Bones*, 366 F.3d at 875. Professor Poliquin's study employed a regression analysis and "time-varying state-level control variables that may influence rates of gun violence, including alcohol consumption, poverty, income, urbanization, black population, and seven age groups." ECF No. 63-1, PDF p. 15. The same control variables were used in related leading studies. ECF No. 66-4, Ex. 13, Poliquin Dep. Tr. 33:15-23.

80.    RMGO's 30(b)(6) representative, Taylor Rhodes, repeatedly admitted that the Waiting Period Law did not prevent RMGO from purchasing guns, from acquiring guns, from carrying out its mission of advocacy, from carrying out its mission of educating citizens, or from defending the right to keep and bear arms, even if it "hinder[ed]" its advocacy mission, ECF No. 63-4 at 48:5-21, because it hindered RMGO's ability to do gun "[g]iveaways," provide guns to staff as bonuses, or use guns as silent auction items, *see* ECF No. 67-2 at 48:22-51:13.

83.    J.H. and S.H. were the members referenced at ECF No. 63-4 at 78:4-17. Mr. Rhodes confirmed that they were able to purchase and take possession of guns since the Waiting Period went into effect. *Id*.

84.    Agree that RMGO did not identify any member who could not take possession of a firearm after the three-day mandatory waiting period lapsed, a matter incumbent on them.

Respectfully submitted: July 11, 2025

PHILIP J. WEISER
Attorney General

_s/_ Joseph G. Michaels
*Joseph G. Michaels**
Assistant Solicitor General

_s/_ Emily Burke Buckley
*Emily Burke Buckley**
Assistant Solicitor General
Colorado Attorney General's Office
1300 Broadway, 6th Floor
Denver, Colorado 80203
Telephone: (720) 508-6000
Email: joseph.michaels@coag.gov
        emily.buckley@coag.gov
*Attorneys for Defendant Governor
  Jared S. Polis*
*Counsel of Record